**BRACH VAN HOUTEN HOLDING, INC., and E.J. Brach Corporation, Plaintiffs,**

v.

**SAVE BRACH'S COALITION FOR CHICAGO, Defendant.**

No. 94 C 3178.

United States District Court, N.D. Illinois, Eastern Division.

June 22, 1994.

Raymond I. Geraldson, Jr., Edward George Wierzbicki, and Douglas N. Masters, Pattishall, McAuliffe, Newbury, Hillard & Geraldson, Chicago, IL, for plaintiffs.

Thomas Edward Johnson and Leslie Ann Jones, Johnson, Jones & Snelling, Chicago, IL, for defendant.

## MEMORANDUM OPINION

KOCORAS, District Judge:

This matter is before the Court on a motion for a preliminary injunction. For the reasons stated below, the motion is granted.

## BACKGROUND

The plaintiffs, Brach Van Houten Holding, Inc. and E.J. Brach Corporation (collectively, "Brach's"), move for a preliminary injunction to enjoin the defendant, Save Brach's Coalition for Chicago ("Save Brach's"), from incorporating Brach's trademark logo into Save Brach's promotional materials.

Save Brach's is a coalition whose goal is to prevent Brach's from closing its candy factory on the West Side of Chicago. Their members include Teamsters Local 738, the Midwest Center for Labor Research, and the Garfield–Austin Interfaith Network. Their goal is certainly laudable. However, Brach's objects to one of their proposals for achieving that goal, which calls for significant changes in management. Save Brach's submitted the proposal to Brach's for its approval, which Brach's refused. Brach's now seeks to enjoin Save Brach's from using the federally registered Brach's logo or imitations thereof, because Brach's does not want for it to appear that Brach's endorses the Save Brach's proposal.

Brach's holds federal registrations for a logo bearing the word Brach's over a striped background, where a small star is used instead of an apostrophe. Since 1962, Brach's has used pink and purple stripes in the logo just described.

## LEGAL STANDARD

The criteria for granting a preliminary injunction require the party seeking the order to show the following:

—the lack of an adequate remedy available at law;

—irreparable harm if the motion is denied;

—the balance of the harms weighs in its favor;

—the public interest is served by granting the motion; and

—the moving party has a likelihood of succeeding on the merits.

*Roland Machinery Co. v. Dresser Indus.*, 749 F.2d 380, 382–83 (7th Cir.1984).

The Seventh Circuit has held that the "likelihood of success" criterion is met if the moving party shows a better than negligible likelihood of succeeding on the merits. *Roland*, 749 F.2d at 387, *quoting Omega Satellite Products v. City of Indianapolis*, 694 F.2d 119, 123 (7th Cir.1982). We review the facts of this case with this standard in mind.

## DISCUSSION

■■■ We will consider the preliminary injunction criteria in turn. The first four are not particularly contested. It is generally held that there is no adequate remedy at law for trademark infringement and unfair competition. *Processed Plastic Co. v. Warner Comm., Inc.*, 675 F.2d 852, 858 (7th Cir. 1982). Brach's has not made a particular showing of irreparable harm if the motion is denied, but we are cognizant that goodwill and reputation are not easily repaired if damaged.[1] The balance of the harms tips in Brach's favor because an injunction will not prevent Save Brach's from communicating its message; it will only prevent Save Brach's from using an imitation of the trademark to which Brach's owns the rights. Finally, the public interest is served by granting the motion because an injunction will help prevent confusion as to the source and sponsorship of the ideas promulgated by Save Brach's. *See James Burrough Ltd. v. Sign of Beefeater, Inc.*, 540 F.2d 266, 274 (7th Cir.1976); *MGM–Pathe Comm. Co. v. Pink Panther Patrol*, 774 F.Supp. 869, 874–75 (S.D.N.Y. 1991).

■■■ Thus, we turn to the likelihood of success on the merits. To succeed on its trademark infringement claim, Brach's must show that they own a valid trademark and

---

1. We do not mean to imply that the defendant's cause is disreputable. Trademark infringement will lie even when a defendant's product is superior to the product of the trademark owner, simply because of the potential for damage to reputation where the trademark owner has no control over the quality of the defendant's product or service.

that the defendant's mark is likely to cause confusion, deception, or mistake. *Forum Corp. of North America v. Forum, Ltd.*, 903 F.2d 434, 439 (7th Cir.1990). Generally, the same facts that support a trademark infringement claim support an unfair competition claim as well. The federal registration of a trademark constitutes prima facie evidence of the ownership and validity of the mark and federal registrations that have become incontestable constitute conclusive evidence of ownership and validity. 15 U.S.C. §§ 1065, 1115.

 Likelihood of confusion is evaluated by considering the fame of the plaintiff's mark, the similarities between the marks, and the proximity of their marketing channels. *Forum*, 903 F.2d at 439. Brach's is a well-known name and hence, is not a weak mark entitled to only narrow protection. Here, the defendant has adopted a logo that is substantially similar to the federally registered Brach's logo. The defendant's logo contains alternating pink and purple stripes in the background,[2] with the word Brach's and the star-shaped apostrophe imposed thereon. Additionally, the defendant's logo has the word "SAVE" placed above the word Brach's, and "Coalition for Chicago" below the word Brach's. Thus, the buttons and stickers it has produced bear the message, "Save Brach's Coalition for Chicago." Because of the substantial similarity between a well-known federally registered logo and the logo being used by the defendant, consumer confusion is likely. *See Computer Care v. Service Systems Enterprises, Inc.*, 982 F.2d 1063, 1070 (7th Cir.1992).

 Save Brach's asserts that consumer confusion is unlikely because persons receiving Save Brach's information would realize that the company would not be sending out materials criticizing its management, and because Save Brach's does not sell candy. As to the first contention, we agree with the Second Circuit that confusion should be measured based on an initial understanding, rather than an understanding that may develop after careful reading of the material.

*See Mobil Oil Corp. v. Pegasus Petroleum Corp.*, 818 F.2d 254, 259–60 (2nd Cir.1987).

 Save Brach's stresses that it does not sell candy and therefore, (1) there is no likelihood of consumer confusion, and (2) the Lanham Act does not apply. As to the former, we note that the Lanham Act is concerned not only with confusion over the source of goods but also with deceptive appearances of approval. *See* 15 U.S.C. § 1125; *Dallas Cowboys Cheerleaders, Inc. v. Pussycat Cinema, Ltd.*, 604 F.2d 200, 204 (2d Cir.1979); *MGM–Pathe Comm. Co. v. Pink Panther Patrol*, 774 F.Supp. 869, 874–75 (S.D.N.Y.1991). In *MGM–Pathe*, the court acknowledged that the use of "Pink Panther" by a gay rights organization could cause the public to think that the trademark owner sponsored the group's activities and was somehow affiliated with the group. *Id.* at 873. The court observed that, "[t]his is the kind of confusion that the trademark laws are designed to avoid." *Id.* We agree with the reasoning of the court in *MGM–Pathe*. Likewise, the court in *Dallas Cowboys Cheerleaders* rejected a narrow reading of the confusion requirement and stated that, "[i]n order to be confused, a consumer need not believe that the owner of the mark actually produced the item and placed it on the market." 604 F.2d at 204.

Save Brach's contends that the Lanham Act does not apply to its activities because Save Brach's does not sell, distribute, or advertise goods or services. *See* 15 U.S.C. §§ 1114, 1125. We are not persuaded to apply Save Brach's narrow interpretation of these Lanham Act provisions. Save Brach's is engaged in soliciting donations, preparing press releases, holding public meetings and press conferences, propounding proposals for the reorganization of Brach's ownership and/or management, and other activities designed to bring about change in the Brach's organization and enhance the stability of workers' jobs. We believe that such work on behalf of its members' interests constitutes a "service" within the meaning of the Lanham

---

**2.** We note that the defendant's logo has a purple band as the first band on the left, whereas the registered logo has a pink band in that position.

Act. *See American Diabetes Ass'n v. Nat'l Diabetes Ass'n,* 533 F.Supp. 16 (E.D.Pa.1981) (enjoining defendant's use of a confusingly similar name where defendant's activity in commerce was the solicitation of donations), *aff'd without op.,* 681 F.2d 804 (3rd Cir.1982); *Senco Products, Inc. v. Int'l Union of Elec., Radio & Machine Workers,* 311 F.Supp. 590, 592 (S.D.Ohio 1970) (raising but not deciding this issue; concluding that whether a Lanham Act injunction is appropriate turns on whether a use is likely to cause confusion, mistake, or deception).

Moreover, we note that the Lanham Act has been construed broadly in the past to reach non-traditional fact situations. *See, e.g., Dallas Cowboys Cheerleaders, supra; Boston Prof. Hockey Ass'n v. Dallas Cap & Emblem Mfg., Inc.,* 510 F.2d 1004 (5th Cir. 1975), *cert. denied,* 423 U.S. 868, 96 S.Ct. 132, 46 L.Ed.2d 98 (1975). *Dallas Cap* was one of the first cases to confront the phenomenon of team marketing and the non-traditional Lanham Act claims engendered thereby. Congress recently amended the Lanham Act to explicitly reflect concerns about confusion as to sponsorship, approval, and association between entities. *See* 15 U.S.C. § 1125. As amended, section 1125(a)(1)(A) forbids false or misleading designation of origin that is "likely to ... deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person." *Id.* In bringing this lawsuit and this motion for a preliminary injunction, Brach's is seeking to prevent confusion as to its affiliation with or approval of Save Brach's proposals. Save Brach's activities clearly seem to be "commercial activities" as contemplated by section 1125(a)(1)(A). For these reasons, we find it appropriate to apply the Lanham Act to the fact situation before us.

We are cognizant that another court has stated that the purveying of ideas is not a service. *See Lucasfilm, Ltd. v. High Frontier,* 622 F.Supp. 931, 933–35 (D.D.C.1985) (involving the use of the term "star wars" to refer to the strategic defense initiative, in light of the plaintiff's "Star Wars" trademark stemming from the movie). Cases from the District Court for the District of Columbia are obviously not binding on this Court. We note approvingly, though, that the court there found it significant that the defendant did not use "star wars" in its name; instead, the defendant used the term in the body of its message "in a descriptive manner to communicate ideas, rather than to create confusion as to sponsorship." *Id.* at 934. While creating confusion as to sponsorship may not have been Save Brach's motive, it is a likely result given Save Brach's use of a close copy of Brach's trademark logo as its own. Brach's is not seeking to enjoin Save Brach's from communicating its ideas about management changes. The Complaint and instant motion do not seek to prevent the defendant from using the name "Brach's;" they seek only to enjoin the defendant's use of Brach's logo.

The above observations about the scope of the relief requested are pertinent to the First Amendment issue [3] raised by Save Brach's. Trademarks are property rights and as such, need not " 'yield to the exercise of First Amendment rights under circumstances where adequate alternative avenues of communication exist.' " *Dallas Cowboys Cheerleaders, Inc. v. Pussycat Cinema, Ltd.,* 604 F.2d 200, 206 (2d Cir.1979), *quoting Lloyd Corp. v. Tanner,* 407 U.S. 551, 567, 92 S.Ct. 2219, 2228, 33 L.Ed.2d 131 (1972). Being enjoined from using Brach's logo, but not the Brach's name, will not unduly hinder Save Brach's ability to communicate its ideas. As noted in *Yankee Pub., Inc. v. News America Pub., Inc.,* 809 F.Supp. 267, 276 (S.D.N.Y. 1992), the trademark law generally prevails over the First Amendment where the trademark functions to connote the source of the product or message, rather than being used in a communicative message.

Finally, the defendant raises the Norris–LaGuardia Act as a bar to our issuance of a preliminary injunction. The

---

**3.** We note that another deficiency with the defendant's First Amendment claim is the lack of state action.

Norris–LaGuardia Act deprives federal courts of jurisdiction to enter injunctions in cases involving or growing out of a labor dispute, except in limited circumstances described in the Act. *See* 29 U.S.C. § 101. The Act defines a "labor dispute" as "any controversy concerning terms or conditions of employment, or concerning the association or representation of persons in negotiating, fixing, maintaining, changing, or seeking to arrange terms or conditions of employment ..." 29 U.S.C. § 113(c).

We have read the cases cited by Save Brach's and agree that where there is a labor dispute within the meaning of the Norris–LaGuardia Act, the federal courts cannot issue an injunction under the Lanham Act. *See* Def. Response at 13–16 and cases cited therein; *see also American Federation of Musicians v. Carroll*, 391 U.S. 99, 107, 88 S.Ct. 1562, 1567–68, 20 L.Ed.2d 460 (1968). Thus, the crucial question is whether there is a labor dispute here that would trigger application of the Norris–LaGuardia Act. Brach's asserts that there is no labor dispute here within the meaning of the statute. While Save Brach's asserts the opposite, it does not attempt to explain how its activities meet the definition of labor dispute, other than to state that "the company is essentially seeking to silence a Coalition whose sole concern is the jobs at Brach's, and a key member of that Coalition is the employees' union, Local 738." Def. Response at 15–16. From the information we have at this preliminary stage, we are not convinced that there is a labor dispute here that would trigger the Norris–LaGuardia Act's prohibitions on injunctive relief. We are guided in this conclusion by *Brotherhood of R. Trainmen v. New York C.R. Co.*, 246 F.2d 114 (6th Cir.1957), *cert. denied*, 355 U.S. 877, 78 S.Ct. 140, 2 L.Ed.2d 107 (1957), where the court stated that objection to the closing of a railroad yard was not a labor dispute under the Norris–LaGuardia Act. *Id.* at 117; *see also First Nat'l Maint. Corp. v. NLRB*, 452 U.S. 666, 101 S.Ct. 2573, 69 L.Ed.2d 318 (1981).

### CONCLUSION

For the reasons stated above, we will issue a preliminary injunction enjoining the defendant from using the Brach's logos depicted in paragraphs 6 and 7 of the Verified Complaint or any counterfeit or colorable imitation thereof. This injunction does not prohibit the defendant from using the word "Brach's."