TAX CAP COMMITTEE, a Political Action Committee registered in the State of Florida, Plaintiff,

v.

SAVE OUR EVERGLADES, INC., d/b/a Save Our Everglades Committee, and National Voter Outreach, Inc., Defendants.

No. 96–1783–CIV–HIGHSMITH.

United States District Court, S.D. Florida.

July 9, 1996.

William F. Hamilton, Stephen S. Stallings, Holland & Knight, Miami, FL, for plaintiff.

Steven I. Peretz, Michael B. Chesal, Kluger, Peretz, Kaplan & Berlin, Miami, FL, Edwin Thom Rumberger, Rumberger, Kirk & Caldwell, Orlando, FL, for defendants.

## ORDER

HIGHSMITH, District Judge.

THIS CAUSE came before the Court upon Plaintiff Tax Cap Committee's ("Tax Cap") emergency motion for preliminary injunction, filed June 28, 1996. The Court set the matter for hearing on July 5, 1996. On the morning of the hearing, Defendant Save Our Everglades, Inc. ("SOE") submitted a motion to dismiss the complaint for lack of subject matter jurisdiction and abstention, in which Defendant National Voter Outreach, Inc. ("NVO") joined. At the hearing, counsel for Tax Cap acknowledged that the Court should consider the issue of subject matter jurisdiction in conjunction with Tax Cap's request for injunctive relief. Consequently, the Court addressed both the motion for preliminary injunction and the motion to dismiss

and for abstention during the course of the hearing.[1]

Having received documentary and testimonial evidence, having heard arguments of counsel, and being otherwise fully advised in the premises, the Court finds that it lacks subject matter jurisdiction over this action. Therefore, the Court denies Tax Cap's prayer for injunctive relief and dismisses the complaint.

### PROCEDURAL BACKGROUND

Plaintiff Tax Cap is currently engaged in a petition drive to place three constitutional amendments on Florida's November, 1996 ballot. The petition form used by Tax Cap is in three parts, one corresponding to each proposed amendment. The top part is printed in blue; the middle part in green; and the bottom part in red. Defendant SOE is also conducting a petition drive to place three constitutional amendments on Florida's November, 1996 ballot. SOE's petition form, like Tax Cap's, consists of three parts—blue, green, and red—one corresponding to each proposed amendment.

Tax Cap commenced this action against SOE and NVO on June 28, 1996. Together with the complaint, Tax Cap filed a motion for emergency injunctive relief, due to the proximity of the petition drive deadline. The basis for Tax Cap's claims against the defendants is SOE's use of the same color scheme as Tax Cap's in its petition form. In its complaint, Tax Cap asserts the following claims:

Count I: Federal Lanham Act Trade Dress Infringement;

Count II: False Designation of Origin (in violation of the Lanham Act); and

Count III: Unfair Competition and/or Trade Dress Infringement at Common Law.

Tax Cap seeks the following relief: a declaration that the defendants have infringed Tax Cap's trade dress, have falsely designated the origin of SOE's petition's, and have unfairly competed with Tax Cap; a preliminary and permanent injunction against the defendants, restraining them from further use of SOE's petition or one similar to it; destruction of all copies of the petition; filing of a report of compliance with the injunction; treble damages; costs; and attorneys' fees.

Tax Cap invokes the Court's federal question jurisdiction as to the first two counts, pursuant to 15 U.S.C. § 1121 and 28 U.S.C. § 1338(a). These provisions confer upon federal district courts original jurisdiction over actions arising under trademark laws, including the Lanham Act (15 U.S.C. § 1125). As to the unfair competition count, Tax Cap invokes the Court's supplemental jurisdiction, pursuant to 28 U.S.C. § 1367.

### FINDINGS OF FACT WITH RESPECT TO SUBJECT MATTER JURISDICTION

1. Plaintiff Tax Cap is a political action committee registered in the State of Florida. David Biddulph is the Chairman and Treasurer of Tax Cap. Tax Cap promotes constitutional amendments "designed to protect citizens from excessive and unfair taxes." (Affidavit of David Biddulph, at 1).

2. Tax Cap is currently engaged in a petition drive to place three constitutional amendments on Florida's November, 1996 ballot.

The amendments proposed by Tax Cap pertain to the following issues:

● Voter approval required for new state, local or other taxes.

● Compensation to owners for loss in the fair market value of property whose use the government restricts.

● Compensation to owners for restrictions in use of real property.

3. Tax Cap's petition consists of three staggered layers of white paper, one for each proposed amendment, bound at the top. In the top section, there are spaces for entering the voter's identifying information. This information is entered only once and is transferred to all layers through the use of NCR paper. The petition form bears the figure of an eagle on its upper left hand corner.

---

**1.** To ensure that Tax Cap had an opportunity to be fully heard on the jurisdictional issue, the Court granted it leave to submit a post-hearing brief in response to SOE's motion.

Across the middle of the eagle is the logo "Tax Cap Committee". The petition form also bears a bates number, stamped in red, in the upper right hand corner. Underneath the voter information section is the following notice:

Mail Petitions and Badly Needed Donations To: Tax Cap Committee, P.O. Box 193, New Smyrna Beach, FL 32170–0193

Note: Prospective volunteers and/or supporters call 1–800–4 TAX LIMIT (482–9546) or 1–904–423–4744

Paid Political Advertisement. Property of Tax Cap Committee. Copyright © 1995 Tax Cap Committee.

4. The printing on the top section of Tax Cap's form, which includes the generic information and the information pertaining to one of the three proposed amendments is in blue. The printing on the second and third layers, which pertain to each of the other two proposed amendments, is in green and red, respectively.

5. Tax Cap's principal, David Biddulph, testified at the hearing that he considers his activities to be those of a businessman, since one of his goals is to attract funding for Tax Cap. According to Biddulph, the signed petitions obtained by Tax Cap have a commercial value. This value is derived by entering the names of petition signers on a database and renting such names to other organizations for fund raising appeals.

6. Defendant SOE is a Florida not-for-profit corporation. Robin D. Rorapaugh is SOE's Executive Director. SOE is "engaged in the promotion of environmental issues and initiatives designed to preserve and restore the Everglades." (Affidavit of Robin D. Rorapaugh, at 1).

7. Like Tax Cap, SOE is currently engaged in a petition drive to place three constitutional amendments on Florida's November, 1996 ballot. The amendments proposed by SOE pertain to the following issues:

● Imposing upon agricultural interests the primary responsibility for paying costs of water pollution abatement in the Everglades.

● Establishment of an Everglades Trust Fund.

● Charging a fee on raw sugar grown in the Everglades Agricultural Area.

8. SOE initially launched its petition drive with three separate forms, one for each proposed amendment. In April, 1996, SOE commenced using a three-part petition form, which shares most of the format characteristics of Tax Cap's form, including the staggered layers in the blue, green, and red color scheme. SOE's petition, however, bears no figures or logo. Rather, its sponsorship of the petition is denoted by the following information, printed underneath the voter information section:

Paid Political Advertisement: SAVE OUR EVERGLADES, INC. D/B/A SAVE OUR EVERGLADES COMMITTEE, PO BOX 547068, ORLANDO FL 32854–7068, 1 888 EVERGLADES (383–7452)

9. According to the affidavit of SOE's principal, Robin Rorapaugh, SOE does not sell any of the voter identification data it generates as a result of its petition drive.

10. SOE has retained Defendant NVO as an independent contractor "to coordinate and facilitate [SOE's] current amendment initiative with respect to their efforts to gather petition signatures and to qualify their amendment[s] for the 1996 ballot." (Affidavit of Richard Arnold, Chief Executive Officer of NVO, at 2).

11. The State of Florida has promulgated comprehensive rules and procedures governing constitutional amendment initiatives. These rules include detailed criteria governing the format and contents of petitions circulated among voters to place such initiatives on Florida's ballot. (Exhibit 3).

12. On June 25, 1996, David C. Leahy, the Supervisor of Elections for Dade County, wrote to the Director of the State Division of Elections regarding Tax Cap's and SOE's use of three-part petition forms that "are virtually identical in format and color." Leahy expressed the opinion that "there may be confusion by petition signers and by election officials verifying signatures on these two three-part petitions." Leahy concluded that, "Although it is unlikely that anything can be done this year, I think we need to look at a

rule change to avoid this situation in the future." (Exhibit 5).

## DISCUSSION

■ For the Court to grant a preliminary injunction, the moving party must demonstrate that:

(1) there is a substantial likelihood that the moving party will prevail on the merits;

(2) the moving party will suffer irreparable injury if the injunction is not granted;

(3) the threatened injury to the moving party outweighs the threatened harm the proposed injunction may cause the opposing party; and

(4) the injunction, if issued, would not be adverse to the public interest.

*Johnson v. U.S. Department of Agriculture,* 734 F.2d 774, 781 (11th Cir.1984).

Tax Cap predicates its motion for preliminary injunction on its trade dress infringement and false designation of origin claims, pursuant to Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a). Section 43(a) of the Lanham Act, provides:

(a)(1) Any person who, on or in connection with any goods or services, or any container for goods, uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which—

(A) is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person, or

(B) in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities,

shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.

15 U.S.C.A. § 1125(a). In its response memorandum to SOE's motion to dismiss, Tax Cap narrows the scope of its Lanham Act claim to section 1125(a)(1)(A).

■ It is beyond dispute that the statutory grant of jurisdiction conferred by the Lanham Act, "may not exceed the constitutional limitations on the power of Congress to regulate [trade and] service marks; rather, it reaches and is coincident with the constitutional boundary embodied in the commerce clause." *Jellibeans, Inc. v. Skating Clubs of Georgia, Inc.,* 716 F.2d 833, 838 (11th Cir. 1983). Moreover, under the plain language of the statute, Tax Cap must meet the jurisdictional burden of showing that SOE "used in commerce", "on or in connection with goods or services", Tax Cap's claimed trade dress.

The word *commerce* "means all commerce which may lawfully be regulated by Congress." 15 U.S.C. § 1127. The statutory definition of the term *use in commerce,* in connection with marks, provides guidance for determining whether SOE has "used in commerce" Tax Cap's claimed trade dress.

The term "use in commerce" means the bona fide use of a mark in the ordinary course of trade, and not merely to reserve a right in a mark. For purposes of this chapter, a mark shall be deemed to be in use in commerce—

(1) on goods when—

(A) it is placed in any manner on the goods or their containers or the displays associated therewith or on the tags or labels affixed thereto, or if the nature of the goods makes such placement impracticable, then on documents associated with the goods or their sale, and

(B) the goods are sold or transported in commerce, and

(2) on services when it is used or displayed in the sale or advertising of services and the services are rendered in commerce, or the services are rendered in more than one State or in the United States and a foreign country and the person rendering the services is engaged in commerce in connection with the services.

15 U.S.C. § 1127.

■ Applying the foregoing criteria to this case, the Court concludes that SOE has

not "used in commerce" Tax Cap's claimed trade dress. The activity which gives rise to Tax Cap's Lanham Act claims is SOE's circulation of the SOE petitions among Florida's registered voters in order to obtain sufficient signatures to place the three SOE-sponsored constitutional amendments on Florida's November, 1996 ballot. Viewing the petitions as "goods" in connection with this activity, the petitions are not being "sold or transported in commerce". Rather, they are being presented to Florida voters and forwarded to Florida's various Supervisors of Elections for certification in what can only be termed as quintessential political activity. Viewing the solicitation of signatures on the petitions as a "service", such a service is not being rendered in commerce, it is being rendered as part of the political process. Unlike Tax Cap, SOE solicits no funds, no volunteers, and no supporters on the face of its petitions. Unlike Tax Cap, SOE does not sell or rent the names obtained through its petition drive. Moreover, this "service" is only being rendered in the State of Florida, not in other states or in foreign countries. Finally, while SOE may be deemed to engage in commerce for other purposes, it is not engaged in commerce in connection with the "service" of garnering signatures.[2]

The cases cited by Tax Cap in its opposition memorandum do not alter this conclusion. *Committee for Idaho's High Desert v. Yost,* 881 F.Supp. 1457 (D.Idaho 1995), involved one environmental group's use of another's trade name. The court rejected the proposition that the law of unfair competition should not apply, stating, "If the distinct identity of such non-profit organizations is lost through a confusingly similar use of a name by another, then it is obvious that the organization will have serious difficulty in raising funds and attracting members and support." *Id.* at 1471. Similarly, in *Brach Van Houten Holding, Inc. v. Save Brach's*

*Coalition for Chicago,* 856 F.Supp. 472 (N.D.Ill.1994), where Save Brach's was accused of infringing Brach's distinctive logo, the court noted that Save Brach's was engaged in soliciting donations, preparing press releases, holding public meetings and press conferences, etc. *Id.* at 475. In rejecting Save Brach's claim of exemption from the Lanham Act, the court characterized such activities as "commercial activities" within the meaning of the Act. *Id.* at 475–76. The circumstances presented by this case are different from those present in *Idaho's High Desert,* in *Brach,* and in the other cases relied upon by Tax Cap for its assertion that SOE's petition falls within the jurisdictional purview of the Lanham Act. Through its petition, SOE is not seeking to establish an identity, to raise funds, or to attract members; SOE's goal—to amend Florida's constitution—is a much narrower one and is totally devoid of commercial overtones.

Having determined that Tax Cap has not carried its jurisdictional burden with respect to the Lanham Act, the Court denies Tax Cap's motion for preliminary injunction without the need to address the likelihood of success prong on the merits, nor the remaining three prongs of the preliminary injunction calculus. Moreover, having found that it lacks subject matter jurisdiction over Tax Cap's Lanham Act claims, the Court declines to exercise supplemental jurisdiction over the unfair competition claim that is predicated on state law. *See* 28 U.S.C. § 1367(c)(3). Therefore, the Court grants SOE's motion to dismiss the complaint.[3]

In light of this determination, the Court need not address the *Burford* abstention argument presented by SOE. The Court notes, nevertheless, that this case appears to meet the requirements for application of this doctrine, as outlined by the Eleventh Circuit in *Rindley v. Gallagher,* 929 F.2d 1552, 1556

---

2. The Court finds that the relationship between SOE and NVO has no bearing on Tax Cap's Lanham Act claims, since NVO's role in the petition drive is that of SOE's agent. The activity which, according to Tax Cap, engenders confusion in the public is the solicitation of signatures among Florida's voters, not the internal machinery through which SOE conducts such solicitation.

3. Section 1367(c)(3) provides that district courts may decline to exercise supplemental jurisdiction over related state claims "if the district court has dismissed all claims over which is has original jurisdiction."

(11th Cir.1991). *Rindley* teaches that *"Burford* abstention is appropriate when exercise of federal review of the question in a case and in similar cases would be disruptive of state efforts to establish a coherent policy with respect to a matter of substantial public concern." The policies and procedures attendant upon amendments to Florida's constitution are matters of substantial public concern for the people of this State. In addition, such matters are peculiarly within the purview of state administrative, legislative, and judicial bodies. Indeed, the State of Florida has adopted comprehensive rules governing these matters. Florida's interest in the petition process is exemplified by the Dade County Supervisor of Elections' swift reaction to the problems presented by the use of similar-looking petitions and his recommendation to the State Director that a rule change be enacted to avoid any potential problems in the future.

Exercising federal review over Tax Cap's dispute with SOE over the "trade dress" of a constitutional amendment petition would be disruptive of Florida's efforts to regulate and control, in a fair and cohesive manner, the constitutional amendment process. Intervention in this matter would result in the Court's interjecting federal considerations into a sphere that is at the core of state government, namely, the state's constitution. Therefore, had it been necessary for the Court to address this issue, the Court would have abstained from exercising jurisdiction to avoid an unwarranted invasion into a state matter, and in deference to, and respect for, the dignity of the State of Florida.

### *CONCLUSION*

Based on the foregoing considerations, it is hereby

ORDERED AND ADJUDGED as follows:

(1) Plaintiff Tax Cap's motion for preliminary injunction is DENIED.

(2) Plaintiff Tax Cap's motion to waive bond or for minimal bond is DENIED as moot.

(3) Defendants SOE's motion to dismiss the complaint for lack of subject matter jurisdiction is GRANTED. The Lanham Act claims asserted in Counts I and II are dismissed with prejudice for lack of subject matter jurisdiction. The unfair competition claim asserted in Count III is dismissed without prejudice on the grounds that the Court declines to exercise supplemental jurisdiction over this state law claim. SOE's alternative motion for abstention is DENIED as moot.

(4) Having disposed of all counts in the complaint, this action is DISMISSED. All motions not otherwise ruled upon are DENIED as moot and the case is CLOSED.

DONE AND ORDERED.