**ILLINOIS HIGH SCHOOL ASSOCIATION, Plaintiff–Appellant,**

v.

**GTE VANTAGE INC., Defendant–Appellee.**

No. 96–1981.

United States Court of Appeals, Seventh Circuit.

Argued Sept. 24, 1996.

Decided Oct. 30, 1996.

As Amended Dec. 3, 1996.

Nicole M. Smith, Michael J. Hayes, Richard W. Young (argued), Darren S. Cahr, Gardner, Carton & Douglas, Chicago, IL, Stephen A. Kouri, John A. Slevin, Vonachen, Lawless, Trager & Slevin, Peoria, IL, for Plaintiff–Appellant.

Stephen D. Gay, Jeffrey A. Ryva, Husch & Eppenberger, Peoria, IL, Michael Elbein, Gerald M. Kraai (argued), Litman, McMahon & Brown L.L.C., Kansas City, MO, for Defendant–Appellee.

Before POSNER, Chief Judge, and WOOD, Jr., and ESCHBACH, Circuit Judges.

POSNER, Chief Judge.

This is an appeal from the denial of a preliminary injunction sought by the Illinois High School Association to protect its trademark "March Madness" against infringement by GTE Vantage Inc. Vantage holds a license for the mark from the National Collegiate Athletic Association. The appeal presents a novel issue of trademark law.

Since the early 1940s, the Illinois High School Association, sponsor of the Illinois high school basketball tournament—the premier high school basketball tournament in the United States, we are told—has used the trademark "March Madness" to designate the tournament, held every year in March and sometimes broadcast nationally. IHSA has licensed the use of the trademark on merchandise associated with the tournament. Another basketball tournament—NCAA's "Final Four" championship—is also played in March, spilling over into the early part of April. In 1982, when CBS began televising the "Final Four" championship games, broadcaster Brent Musburger used the term "March Madness" to designate them. The term caught on and is now widely used by the media and the public to denote this basketball tournament as well as IHSA's.

In 1993 or 1994, NCAA began licensing the use of the term "March Madness" to producers of goods and services related to its tournament. Earlier this year one of the licensees, Vantage, began using "March Madness" to promote a CD–ROM game that it calls "NCAA Championship Basketball." The term "March Madness" appears in a circle on the box in which the game is to be sold and in some of the game's computer graphics. Vantage's use of the term precipitated this

suit, which seeks injunctive relief for unfair competition under section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a). *Two Pesos, Inc. v. Taco Cabana, Inc.*, 505 U.S. 763, 768, 112 S.Ct. 2753, 2757, 120 L.Ed.2d 615 (1992).

IHSA argues that the use by NCAA licensees of the term "March Madness" is likely to confuse consumers. A few will think that Vantage's game is sponsored by IHSA or otherwise connected with the Illinois high school basketball tournament, but more will think that the IHSA tournament is sponsored by NCAA or that the trademark "March Madness" affixed to merchandise licensed by IHSA actually refers to the NCAA tournament. The latter effect—what the cases call "reverse confusion," where a powerful junior user of the trademark (NCAA dwarfs IHSA) swamps the senior's use of it with advertising and other publicity that extinguishes consumer demand for the senior user's product, *Sands, Taylor & Wood Co. v. Quaker Oats Co.*, 978 F.2d 947, 957–58 (7th Cir.1992); *Sterling Drug, Inc. v. Bayer AG*, 14 F.3d 733, 740–41 (2d Cir.1994); 3 J. Thomas McCarthy, *McCarthy on Trademarks and Unfair Competition* § 23.01[5] (3d ed. 1995)—is likely to impair IHSA's ability to make money by licensing its trademark on merchandise and other incidentals.

The issue of likelihood of confusion does not arise, however, until it is determined that the plaintiff has a trademark that the law will protect; and the district judge thought that IHSA does not, so far as the use of the term "March Madness" in connection with the NCAA tournament is concerned. It has been many years since the media first appropriated the term to describe the NCAA tournament (if "appropriation" is the right word—it may be a case of independent discovery). Most people know what they know about college basketball from the media. If the media call the NCAA tournament "March Madness," that is what the public will call it, or know it as.

■ IHSA argues that it is unfair to make its rights depend on the whims of the media. Because a court could not, without violating the free-speech clause of the First Amendment, have enjoined (or used other legal remedies to prevent or deter) the media from calling the NCAA tournament "March Madness," IHSA was helpless to prevent its trademark from being transformed into the name of another product. Its property right should not, it argues, depend on events over which it has no control.

It is true that IHSA could not have sued Musburger or CBS for referring to "March Madness" in a news program (including a program of sports news), see *L.L. Bean, Inc. v. Drake Publishers, Inc.*, 811 F.2d 26 (1st Cir.1987), or even in advertising if the term were used merely for identification. *New Kids on the Block v. News America Publishing, Inc.*, 971 F.2d 302, 308 (9th Cir.1992). But it could have sued them (with what success we need not speculate—a suit at this late date would surely be barred by laches) for using its trademark to promote CBS's broadcast of the NCAA championship. And it could have supplicated them not to spoil its trademark by using it to name something else. A serious trademark holder is assiduous in endeavoring to convince dictionary editors, magazine and newspaper editors, journalists and columnists, judges, and other lexicographically influential persons to avoid using his trademark to denote anything other than the trademarked good or service. These efforts sometimes succeed. IHSA was not assiduous. But that is a detail—is in fact irrelevant, for no defense of laches has been pleaded by Vantage or, so far as the record suggests, would succeed.

■ What matters is that a trademark is not nearly so secure an entitlement as a property right. See *Prestonettes, Inc. v. Coty*, 264 U.S. 359, 368, 44 S.Ct. 350, 351, 68 L.Ed. 731 (1924) (Holmes, J.); *Door Systems, Inc. v. Pro–Line Door Systems, Inc.*, 83 F.3d 169, 173 (7th Cir.1996); *WCVB–TV v. Boston Athletic Ass'n*, 926 F.2d 42, 45 (1st Cir.1991). It is mainly just a designation of source, 15 U.S.C. §§ 1114(1), 1125(a), and dies when it ceases to designate, for whatever reason other than the culpable conduct of the defendant. See, e.g., *Sands, Taylor & Wood Co. v. Quaker Oats Co.*, *supra*, 978 F.2d at 960. Were NCAA responsible for blotting out the exclusive association of "March Madness" with the Illinois high school basketball tournament, IHSA might

have a remedy on a theory of reverse confusion, though probably not an injunctive remedy since that would promote confusion among consumers, most of whom now identify the term with the NCAA tournament. But IHSA blames CBS, which is not a defendant, rather than NCAA, much less Vantage, for the blotting out.

■ Even antidilution statutes—and there is now an antidilution provision in federal trademark law for "famous" marks, 15 U.S.C. § 1125(c), which however "March Madness" is not claimed to be—do not elevate a trademark all the way to property. They do protect the trademark owner from the erosion of the distinctiveness and prestige of a trademark caused by the sale of other goods or services under the same name (for example, the use of "Tiffany & Co." as the name of a hamburger stand, or simply a proliferation of borrowings that, while not degrading the original seller's mark, are so numerous as to deprive the mark of its distinctiveness and hence impact), even though there is no confusion of source. E.g., *Sunmark, Inc. v. Ocean Spray Cranberries, Inc.,* 64 F.3d 1055, 1060 (7th Cir.1995); *Fruit of the Loom, Inc. v. Girouard,* 994 F.2d 1359, 1363 (9th Cir.1993); see also 3 McCarthy, *supra,* § 24.13[1]. But the existence of a mark that designates a particular source is presupposed. When a trademark becomes generic, such as "aspirin" or "thermos," and so loses trademark protection, because the public, perhaps egged on by the omnipresent media, decides to use the trademark to designate not the particular manufacturer's brand but the entire product comprising all the competing brands, the trademark is dead no matter how vigorously the holder has tried to prevent this usage. *W.T. Rogers Co. v. Keene,* 778 F.2d 334, 347 (7th Cir.1985); *King–Seeley Thermos Co. v. Aladdin Industries, Inc.,* 321 F.2d 577, 579 (2d Cir.1963); *DuPont Cellophane Co. v. Waxed Products Co.,* 85 F.2d 75, 81–82 (2d Cir.1936); *Bayer Co. v. United Drug Co.,* 272 Fed. 505, 509 (S.D.N.Y.1921) (L.Hand, J.); 2 McCarthy, *supra,* § 12.08. An antidilution statute won't resurrect it, since if a mark becomes generic it is no longer distinctive, as the statutes require. 15 U.S.C. § 1125(c)(1); *McGraw–Edison Co. v. Walt Disney Productions,* 787

F.2d 1163, 1174 (7th Cir.1986); *Hyatt Corp. v. Hyatt Legal Services,* 736 F.2d 1153, 1157 (7th Cir.1984).

■ IHSA acknowledges this point but seeks to deflect it by pointing out that "March Madness" has not become generic. It is not the name of basketball tournaments, or any other set of events, that occur in March. It is the name of two basketball tournaments, IHSA's and the NCAA's. (It has also been used to promote special discount sales of cars, Jennifer Cobb, "March Madness Not Confined to Hoops," *Tulsa World,* March 22, 1995, p. 2, but these uses are too remote to bear significantly on this case.) We cannot see what difference that makes. There is no magic in labels. Let "March Madness" be called not a quasi-generic term, or a term on its way to becoming generic, but a dual-use term. Whatever you call it, it's a name that the public has affixed to something other than, as well as, the Illinois high school basketball tournament. A trademark owner is not allowed to withdraw from the public domain a name that the public is using to denote someone else's good or service, leaving that someone and his customers speechless. No case so holds, other than the cases involving generic names, but no case holds the contrary, either. It is an issue of first impression, and we think that for the sake of protecting effective communication it should be resolved against trademark protection, thus assimilating dual-use or multiple-use terms to generic terms.

IHSA relies heavily on *Lucasfilm Ltd. v. High Frontier,* 622 F.Supp. 931 (D.D.C. 1985). District court decisions have little weight as precedents, *Anderson v. Romero,* 72 F.3d 518, 525 (7th Cir.1995); *Mueller v. Reich,* 54 F.3d 438, 441 (7th Cir.1995)—dicta in those decisions even less—and anyway *Lucasfilm* is not on point. The producer of the movie trilogy "Star Wars" tried unsuccessfully to prevent public interest groups from using in their advertisements opposing President Reagan's Strategic Defense Initiative (an anti-missile program) the term "star wars" to denote the SDI. In the course of rejecting the producer's claim, the court remarked that the use of the term "Star Wars"

to denote the SDI would not prevent the producer from using the term "in connection with goods and services." 622 F.Supp. at 935. All that this can sensibly mean is not that Lucasfilm retained the *exclusive* right to use the term in connection with *any* and all goods and services, an issue not remotely before the court, but that it remained free to use its trademark "Star Wars" to designate the movies and the merchandise associated with them. If someone bought rights to the SDI from the U.S. government and sold the anti-missile program to another country under the name "Star Wars," nothing in the *Lucasfilm* opinion or in the principles of trademark law would entitle Lucasfilm to enjoin that use of the name. The name would have become attached by the public to another product as well as to the movies, just as happened here.

Not only was the preliminary injunction sought by IHSA rightly denied, but since the suit appears to lack any merit, the district court on remand should enter judgment for the defendant, *Mast, Foos & Co. v. Stover Mfg. Co.*, 177 U.S. 485, 494–95, 20 S.Ct. 708, 712, 44 L.Ed. 856 (1900); *Pratte v. NLRB*, 683 F.2d 1038, 1044 (7th Cir.1982); *Berry v. Bean*, 796 F.2d 713, 719 (4th Cir.1986), unless, as we greatly doubt, IHSA is able to find another arrow in its quiver. 11A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure* § 2950, p. 245 (2d ed. 1995).

We do not opine on the scope of the trademark rights that either IHSA or NCAA has, beyond ruling that IHSA's rights do not extend to the NCAA tournament and to merchandise such as Vantage's game that is sold in connection with that tournament.

AFFIRMED WITH REMAND.