**LUCASFILM LTD., Plaintiff,**

v.

**HIGH FRONTIER, et al., Defendants.**

**LUCASFILM LTD., Plaintiff,**

v.

**COMMITTEE FOR A STRONG, PEACEFUL AMERICA, et al., Defendants.**

Civ. A. Nos. 85–3609, 85–3668.

United States District Court, District of Columbia.

Nov. 26, 1985.

listing of recent cases, see *GEUMCO,* 764 F.2d at 903 nn. 35–38.

Arthur J. Levine, Laurence R. Hefter, Jay L. Witkin, Philip J. Moy, Thomas W. Gorman, Washington, D.C., for plaintiff.

Marianne Mele Hall, G. Lindsay Simmons, Scott W. Woehr, Washington, D.C., for defendants in 85-3609.

Mary Jacksteit, John McNally, Frederic C. Williams, Anthony Parker, Washington, D.C., for defendants in 85-3668.

## MEMORANDUM

GESELL, District Judge.

These two complaints alleging infringement of plaintiff's STAR WARS trademark involve the same questions of law and substantially similar facts. The suits have been consolidated and plaintiff's motion for preliminary injunction in each case will be treated as submitting the issues for final resolution on the merits pursuant to Fed.R. Civ.P. 65(a)(2). The Court has received briefs, affidavits and heard full oral argument by counsel for all parties.

Not so long ago, in a studio far, far away from the policymakers in Washington, D.C., George Lucas conceived of an imaginary galaxy where fantastic creatures and courageous knights battled an evil empire with spaceships, "blaster" guns and light sabers. Plaintiff Lucasfilms Ltd. marketed this imaginative fantasy in three enormously popular films, the first of which was entitled "STAR WARS." STAR WARS has since become a strong trademark owned by plaintiff and registered as a service mark under the Lanham Act. 15 U.S.C. §§ 1051–1127. Plaintiff has built on the national success of these movies and the goodwill associated with STAR WARS by using the STAR WARS mark to merchandise dolls, toys, comic books, cookies, paper cups, watches, candles and even bubble bath.

Meanwhile, in the real world of defense strategy and international politics, newspapers, politicians, scientists and spokesmen of allied and enemy nations have chosen to characterize the Reagan Administration's Strategic Defense Initiative (SDI) as its "star wars" program. SDI seeks to devel-

op defenses against a nuclear attack with weapons based in space somewhat reminiscent of those depicted in the STAR WARS movies. Some see SDI as a brilliant proposal full of promise. Others fear the idea will simply escalate the risk of nuclear war and frustrate efforts toward disarmament. An intense political debate is under way and still raging. Through persistent and prolific use in newspapers and magazines and over television and radio the phrase star wars has become a popular synonym for the SDI proposal.

The principal defendants are public interest groups aligned on opposite sides of this political controversy. Both have chosen to express their views through television messages which refer to SDI as star wars. Except for their viewpoint, defendants' television messages are similar; both focus on a child's response to space defenses against a nuclear attack. In addition, like many others, they sometimes refer to star wars in their literature as a catchy shorthand for SDI. Ironically, because of their opposing viewpoints, defendants are also engaged in a dispute between themselves as to whether star wars is an apt synonym for SDI, or should be replaced by more comforting phrases such as "Peace Shield" or "High Frontier."

Plaintiff disavows involvement in this political fray and wishes only to protect its business interest in the STAR WARS trademark. Plaintiff fears that associating STAR WARS with this political controversy will injure the valuable goodwill it has achieved by developing a mark associated with imaginary battles among fantastic creatures in distant worlds. Inevitably, the political debate identifies STAR WARS in some minds with devastation and death from uncontrollable nuclear escalation. Plaintiff urges this could detract from the public's present association of STAR WARS with humor and fantasy. The goodwill value of the trademark is particularly threatened by defendants' use of television advertisements that are attractive to young television viewers.

Plaintiff seeks to enjoin defendants' use of the phrase star wars alleging trademark infringement, unfair competition, misappropriation, disparagement and a number of other similar business torts. The proof presented at this stage leaves no doubt that STAR WARS is still a strong trademark and defendants' television messages injure the value of the mark in some minds. Nonetheless, while plaintiff admittedly faces this unfortunate series of circumstances, the Court has no authority to provide plaintiff relief.

■ Plaintiff has no property right in the use of words commonly found in the English language. It is well established that the property right conferred by a trademark is very limited:

> A trademark is not property in the ordinary sense, but only a word or symbol indicating the origin of a commercial product. The owner of a mark acquires the right to prevent the goods to which the mark is applied from being confused with those of others and to prevent his own trade from being diverted to competitors through their use of misleading marks. There are no rights in a trademark beyond these.

*Industrial Rayon Corp. v. Dutchess Underwear Corp.*, 92 F.2d 33 (2d Cir.1937), *cert. denied*, 303 U.S. 640, 58 S.Ct. 610, 82 L.Ed. 1100 (1938); *accord Power Test Petroleum Distributors v. Calcu Gas, Inc.*, 754 F.2d 91, 97 (2d. Cir.1985); *Dresser Industries, Inc. v. Heraeus Engelhard Vacuum, Inc.*, 395 F.2d 457, 464 (3d Cir.1968), *cert. denied*, 393 U.S. 934, 89 S.Ct. 293, 21 L.Ed.2d 270 (1968). Thus plaintiff's trademark, STAR WARS, only protects him against those who seek to attach those words to products or services that compete with him in the marketplace, against those who dilute the value of his mark by engaging in a noncompeting trade or business but utilize the mark in connection with a disreputable or sleazy product or service, and, under some circumstances, even against those who injure his business by offering goods or services that disparage the goodwill value of STAR WARS.

This case fits none of these molds. The defendants have not affixed any trademark to any goods or services for sale. Indeed, they are not engaged in selling anything but ideas. They do not compete with plaintiff and are not engaged in creating any confusion or mistake that takes advantage of plaintiff's good will to further a trade or business. Defendants' television messages and literature merely attempt to persuade the public of their respective but conflicting viewpoints. In this sense, their use of the phrase star wars stands on the same footing as its use in books, newspapers, magazines, comics,[1] news reports, editorials or public speechs as a shorthand reference to the SDI program. Thus it is not the type of use that the laws against trademark infringement and unfair competition are designed to restrict.

Nonetheless, plaintiff suggests that defendants' efforts to persuade the public of their viewpoint is a "service" within the meaning of the Lanham Act. Federal trademark laws, however, only prohibit unauthorized "use in commerce" of a trademark "in connection with the sale, offering for sale, distribution or advertisement of any goods or services" or affixing "a false designation of origin, or any false description or representation" to goods and services used in commerce. 15 U.S.C. §§ 1114, 1125(a). "Use in commerce" is defined as placing the mark on goods sold in commerce or using or displaying it in the sale or advertising of services rendered in commerce. 15 U.S.C. § 1127. Defendants' only activity is trying to communicate their ideas. Purveying points of view is not a service. Even if promoting of ideas was considered to be conducting an educational "service," television messages that are only used to express those ideas do not sell or advertise them.[2] In this respect, defend-

ants' activities are indistinguishable from those of a publisher or lecturer who uses the phrase star wars while attempting to educate others or promote a certain view.

Trademark law does not reach such uses. The purpose of trademark regulation is to prevent unfair competition and protect consumers from fraud and deception. *Id.* Unfair competition and the other business torts invoked by plaintiff are similarly limited. These laws do not reach into the realm of public discourse to regulate the use of terms used outside the context of trade. Defendants' use of the phrase star wars to persuade the public of their viewpoint through television messages is not an infringing use.

Traditional trademark law supports the common sense conclusion that defendants' use of star wars under these circumstances cannot be enjoined. Defendants have not used the phrase as a title for their organization or propaganda campaign in a way that might create confusion among contributors or supporters. *Compare National Association for the Advancement of Colored People v. N.A.A.C.P. Legal Defense & Educational Fund, Inc.,* 559 F.Supp. 1337 (D.D.C.1983), *rev'd on other grounds,* 753 F.2d 131 (D.C.Cir.1985); *American Diabetes Association v. National Diabetes Association,* 533 F.Supp. 16, 21 (E.D.Pa.1981). Defendants' use of the phrase star wars is not to advertise, connote sponsorship or act as an attention-getting symbol to promote products or services. *Compare Mobile Oil Corp. v. Mobile Mechanics, Inc.,* 192 U.S. P.Q. 744 (D.C.Conn.1976). Defendants use star wars in the body of their message in a descriptive manner to communicate ideas, rather than to create confusion as to sponsorship. Such use of a trademark is not prohibited. *See Reddy Communications,*

---

1. *See, e.g.,* Doonesbury comic strip for November 22, 1985, the first three frames of which duplicate defendant High Frontier's television message.

2. Defendants The Communications Company and Richard Pollack Associates are engaged in providing advertising services commercially, but are only acting as the conduit for the mes-

sage of the public interest group sponsoring this advertisement. It is not enough that a defendant provides a service and uses a trademark— the trademark laws only reach activites in which a trademark is used *in connection* with selling or advertising a service. These messages do not sell or advertise the services of the commercial or noncommercial defendants.

*Inc. v. Environmental Action Foundation,* 477 F.Supp. 936, 946 (D.D.C.1979).

When politicians, newspapers and the public generally use the phrase star wars for convenience, in parody or descriptively to further a communication of their views on SDI, plaintiff has no rights as owner of the mark to prevent this use of STAR WARS. Even though the descriptive meaning is originally derived from the trade use, courts obviously cannot regulate the type of descriptive, non-trade use involved here without becoming the monitors of the spoken or written English language. Since Jonathan Swift's time, creators of fictional worlds have seen their vocabulary for fantasy appropriated to describe reality. Trademark laws regulate unfair competition, not the parallel development of new dictionary meanings in the everyday give and take of human discourse. Plaintiff is in the difficult position of objecting because what he has depicted as fantasy may be frightening when depicted as a potential reality. Plaintiff must be left to his own devices to maintain the strength of his trademark by making the differentiation clear and convincing.

Plaintiff argues that the defendants' use of the phrase star wars differs from that of others engaged in this political debate because by using children it is attractive to children. One can appeal to adults by treating them as big children and child-like presentations are appealing to adults. Plaintiff's own films are persuasive evidence of this. The impact of defendants' messages, like that of others who associate star wars with SDI, is clearly directed towards adults and they are entitled to frame their messages in this way, even if this aspect inadvertently causes greater harm to plaintiff.

■ Overlying this lawsuit is plaintiff's natural concern that if he does not seek legal remedies to protect his mark he will lose it. But the use of star wars in political propaganda, newspapers or noncommercial, non-trade references will not undermine plaintiff's exclusive property right to use it in connection with goods and services. The words "star" and "wars" were in the common domain before plaintiff established its service mark and plaintiff's efforts gave STAR WARS a special, secondary meaning. Now the phrase star wars has acquired a double meaning, but it has not become a generic term, that is a term associated with an entire class of goods or services. Continued non-trade, noncommercial use cannot take the mark away from plaintiff Lucasfilms. Whether this use makes the trademark become ultimately more or less valuable is a matter of conjecture, but the trademark is still plaintiff's. The new meaning of the phrase in the political or scientific context does not affect the distinct, and still strong secondary meaning of STAR WARS in trade and entertainment. Plaintiff's right to prevent an infringing use of its mark remains intact.

It would be wholly unrealistic and unfair to allow the owner of a mark to interfere in the give-and-take of normal political discourse, particularly where such interference of things would be incomplete, selective and ineffective. Yet, it would be equally unrealistic and unfair to take from the lawful owner of a strong trademark his continued right to its commercial use because others, beyond his control and contemplating no harm to him, used the words of the trademark as part of an on-going international political debate.

The Court cannot venture beyond the property protections provided by the trademark laws and attempt to regulate the terms of public debate. As the dispute between plaintiff and the defendants and the dispute between the defendants in this case illustrates, labels can have great significance, in both business and politics. But courts have no role in overseeing the use of labels in the context presented by this case.

The Court has concluded on the unique facts of these cases that defendants' actions are not an infringing use within the trademark laws or related causes of action brought by the plaintiff. Judgment on the merits for the defendants will be entered and the complaints will be dismissed. The

936

only issues upon which there is any factual dispute are the strength of plaintiff's trademark and the potential for injurious confusion. The Court has assumed that both of these issues would be resolved in plaintiff's favor, but neither is decisive to the outcome of the cases for the reasons stated.

An appropriate order dismissing the complaints is filed concurrently with this Memorandum.