**UNITED WE STAND AMERICA, INC., a D.C. Corporation, Plaintiff,**

**v.**

**UNITED WE STAND AMERICA, NEW YORK, INC., a New York Corporation, and Alex Rodriguez, individually and d/b/a United We Stand America, New York, Inc., Defendant.**

**No. 94 Civ. 4690(WK).**

United States District Court, S.D. New York.

Oct. 9, 1996.

---

Rita A. Rodin, Skadden, Arps, Slate, Meagher & Flom, New York City, for Plaintiff.

Alex Rodriguez, New York City, pro se.

Thomas J. Hillgardner, Law Offices of Thomas J. Hillgardner, Flushing, NY, Kim J. Askew, Hughes & Luce, L.L.P., Dallas, TX, for Defendants.

## OPINION AND ORDER

WHITMAN KNAPP, Senior District Judge.

Before us is an action brought by plaintiff United We Stand America (hereinafter "plaintiff") for infringement and false designation under the Lanham Act, 15 U.S.C. §§ 1114, 1125, against defendant United We Stand, America New York (hereinafter "defendant UWSANY") and defendant Alex Rodriguez (hereinafter "defendant Rodriguez") to enjoin use of plaintiff's registered service mark "United We Stand America".

The plaintiff filed a motion for summary judgment against defendant Rodriguez. Defendant UWSANY filed a motion to vacate default judgment entered against it for failure to answer or otherwise move against the complaint, having asserted that it had been unable to get a lawyer to represent it. Magistrate Judge Michael H. Dolinger has filed a Report and Recommendation recommending that we grant plaintiff's motion for summary judgment (the "April 29 Report"), and a Report and Recommendation recommending that we deny defendant UWSANY's motion to vacate the default judgment (the "May 2 Report").

Having reviewed the two Reports *de novo*, and listened to the parties' oral arguments, we find that only one question demands further examination: whether the defendants, through their New York incorporated political organization, provide a "service" within the meaning of the Lanham Act.[1] We find this to be a close question. The Lanham Act in several places confines its application to persons who are engaged in offering for sale or distribution "goods or services." *See* 15 U.S.C. §§ 1111 et seq. Defendants persuasively argue that, under the doctrine of *eusdem generis,* the meaning of "services" should be colored by its constant association with the word "goods."

Plaintiff's citation of *Jund v. Town of Hempstead* (2d Cir.1991) 941 F.2d 1271, 1285, in no way refutes this argument. Federal jurisdiction in that case was based on the Hobbs Act, 18 U.S.C. § 1951(a). Unlike Lanham, the Hobbs Act says nothing about "goods" or "services" but outlaws interference with commerce "in any way or degree." *See Jund,* 941 F.2d at 1285.

However, a purview of similar cases brought under the Lanham Act demonstrates that the word "services" has been quite broadly interpreted. It has not been "limited to commercial enterprise. It is as available to public service organizations as to

---

**1.** To prevail on an infringement claim under the Lanham Act, the plaintiff must demonstrate that defendants used in commerce, without the plaintiff's consent, a "reproduction, counterfeit, copy, or colorable imitation of a registered mark *in* connection with the sale, offering for sale, distribution, or advertising of *any* goods or services...." 15 U.S.C. § 1114(1)(a) (emphasis added).

merchants and manufacturers." *See, e.g., N.A.A.C.P. v. N.A.A.C.P. Leg. Defense Fund* (D.D.C.1983) 559 F.Supp. 1337, 1342, *rev'd on other grounds* (D.C.Cir.1985) 753 F.2d 131. In that case, the plaintiff *N.A.A.C.P.* [The National Association for the Advancement of Colored People] back in 1939, caused the incorporation of the defendant The Legal Defense Fund. The reason for this was that plaintiff had for a long time been engaged in political activity in pursuit of its named objective. Being thus engaged in political activity, no one contributing to its activities could claim a charitable tax deduction. But under the leadership of its counsel Thurgood Marshall it was beginning in addition to its political activities to pursue its objectives by bringing lawsuits in state and federal courts. It was thought—correctly as it turned out—that if Mr. Marshall's activities were performed by a separate entity (whose corporate name was "The Legal Defense Fund") contributions to such entity could be claimed as charitable deductions. Although it was always acknowledged that both organizations were engaged in a joint venture (the "advancement of colored people") and despite the fact that plaintiff had specifically authorized the defendant to append the initials N.A.A.C.P. to its corporate name, the Internal Revenue Service never claimed that contributions to defendant were not tax deductible.

So matters stood for many years. The two organization were legally separate but jointly managed, and everybody was happy. But with the passage of time the founders of both organizations departed, either through death or the pursuit of other interests. Mr. Marshall, for example, became successively a United States Circuit Judge, Solicitor General, and Supreme Court Justice. The result was independent management for the two entities, antagonism and ultimately the lawsuit under discussion.

Although by no stretch of the imagination could it be said that either organization was engaged in rendering any sort of commercial services, the District Court found that injunctive relief was appropriate because the public "is likely to believe that [defendant's] *services* come from the same source, or are affiliated with the [plaintiff]. Nor is the right to enjoin an infringement limited to commercial enterprise. It is as available to public service organizations as to merchants and manufacturers." *N.A.A.C.P.* 559 F.Supp. at 1342 (emphasis added, citations omitted). The Court of Appeals in reversing "on other grounds" (laches on plaintiff's part) actually approved the above quoted reasoning. Had it done otherwise, it would have had no occasion to reach the question of laches.

Other courts, faced with similar situations have found that the Lanham Act applies to non-commercial organizations "engaged in soliciting donations, preparing press releases, holding public meetings and press conferences, propounding proposals" for the furtherance of a non-commercial, ideological goal. *See, e.g., Brach Van Houten Holding, Inc. v. Save Brach's Coalition for Chicago* (N.D.Ill.1994) 856 F.Supp. 472, 475–76; *United States Jaycees v. San Francisco Junior Chamber of Commerce* (N.D.Cal.1972) 354 F.Supp. 61, *aff'd,* (9th Cir.1975) 513 F.2d 1226; *United States Jaycees v. Philadelphia Jaycees* (E.D.Pa.1978) 490 F.Supp. 688, 691 (defendant's activities involved organizing and holding meetings for young men interested in the affairs and improvement of their communities, with the purpose of fostering interest in the community betterment programs), *vacated & remanded on other grounds,* 639 F.2d 134 (3rd Cir.1981) (finding that district court's refusal to enjoin defendant's use of plaintiff's registered mark to be error, and thereby implicitly affirming application of the Lanham Act to defendant's activities).

Moreover, the courts have not limited themselves to instances where the "service" provided is clearly defined. In *American Diabetes Ass'n v. National Diabetes Ass'n* (E.D.Pa.1981) 533 F.Supp. 16, 18, the court found jurisdiction under the Lanham Act, though at the time of the action "defendants [had] only solicited funds and [had] not provided any services with these funds." *See also Kappa Sigma Fraternity v. Kappa Sigma Gamma Fraternity* (D.N.H.1987) 654 F.Supp. 1095, 1102 (applying Lanham Act to activities of an unincorporated college frater-

nity where "service" provided was unclear and defendant's sole activity "in commerce" was soliciting donations from alumni).

We have found one case which at first glance appears to warrant a contrary conclusion, *Lucasfilm Ltd. v. High Frontier* (D.D.C.1985) 622 F.Supp. 931, 935. There, Judge Gesell stated that "[t]he court cannot venture beyond the property protections provided by the trademark laws and attempt to regulate the terms of public debate." However, Judge Gesell actually based his decision on the fact that the defendants had "not used the phrase as a title for their organization or propaganda campaign in a way that might create confusion among contributors or supporters," *Id.* at 934. Thus, Judge Gesell's decision, in contrast with his dicta, is consistent with the other decisions we have cited.

As we above indicated, we found defendants' argument persuasive, and if writing on a clear slate we might have adopted it. However, having found seven district courts and three circuit courts (*N.A.A.C.P.*— D.C.Cir., *San Francisco Jaycees*—9th Cir., *Philadelphia Jaycees*—3d Cir.) refuting it, and none supporting it, we feel ourselves constrained also to reject it.

As we previously indicated, we reviewed the remaining issues *de novo.*, and found no reason to expound upon or disagree with Magistrate Judge Dolinger's highly reasonable conclusions. Accordingly we adopt in their entirety without opinion his Reports and Recommendations dated April 29 and May 2. We grant summary judgment to the plaintiff as against defendant Rodriguez, and deny defendant UWSANY's motion to vacate the default judgment.

SO ORDERED.