School of Visual Arts v Kuprewicz (2003 NY Slip Op 23952)

School of Visual Arts v Kuprewicz

2003 NY Slip Op 23952 [3 Misc 3d 278]

December 22, 2003

Supreme Court, New York County,

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

As corrected through Wednesday, June 2, 2004

[*1]
School of Visual Arts et al., Plaintiffs,
v
Diane Kuprewicz et al., Defendants.
Supreme Court, New York County, December 22, 2003

APPEARANCES OF COUNSEL

Epstein, Becker & Green, P.C., New York City (John Barry of counsel), for plaintiffs. Hollander & Company LLC, New York City (Jay Hollander of counsel), for Diane Kuprewicz, defendant.

{**3 Misc 3d at 280} OPINION OF THE COURT

Rosalyn Richter, J. 
In this action, plaintiffs School of Visual Arts (SVA) and Laurie Pearlberg, SVA's Director of Human Resources, contend that defendant Diane Kuprewicz, a former employee at SVA, engaged in a campaign of unlawful harassment against plaintiffs. Specifically, plaintiffs allege that Kuprewicz posted two false job listings on www.craigslist.com, an Internet Web site, stating that SVA was seeking applications for Pearlberg's position, which was not in fact vacant. These job postings, which contain accurate contact information for the purported position and otherwise appear legitimate, direct applicants to send a resume and cover letter to Pearlberg's supervisor at SVA. Plaintiffs further contend that Kuprewicz sent an e-mail to SVA's Human Resources Department's e-mail address containing a similar job listing for Pearlberg's position, formatted to appear as if it were posted at www.monster.com, a legitimate Web site for employment listings.[FN1]

Plaintiffs also allege that Kuprewicz provided Pearlberg's SVA e-mail address to various pornographic Web sites which resulted in Pearlberg's receipt of large volumes of unwanted sexually explicit e-mails. Similarly, plaintiffs maintain that Kuprewicz was responsible for Pearlberg's receipt, by regular mail at her work address, of unwanted catalogs offering pornographic materials. Finally, plaintiffs contend that Kuprewicz sent Pearlberg a number of "electronic cards" at her SVA e-mail address. Several of these cards were pornographic in [*2]nature, and one was purportedly sent by SVA's Associate Human Resources Director. Plaintiffs' complaint contains six causes of action: false designation of origin under the Lanham Act (15 USC § {**3 Misc 3d at 281}1051 et seq.), dilution under the Lanham Act, defamation and trade libel, violation of Civil Rights Law §§ 50 and 51, trespass to chattels, and intentional interference with prospective economic advantage.
In response to plaintiffs' motion for preliminary injunctive relief, Kuprewicz cross-moves pursuant to CPLR 3211 (a) (7) to dismiss the complaint in its entirety for failure to state a cause of action.[FN2]

In determining such a motion, the court must accept as true all of the facts alleged in the complaint as well as all reasonable inferences that may be gleaned from those facts. (Skillgames, LLC v Brody, 1 AD3d 247 [1st Dept 2003].) The court may not assess the merits of the complaint or its factual allegations, but may only determine if, assuming the truth of the facts alleged, the complaint states the elements of a legally cognizable cause of action. (Guggenheimer v Ginzburg, 43 NY2d 268 [1977].) If, however, the allegations in the complaint are merely conclusory and lack factual support, the complaint fails to state a cause of action. (M.J. & K. Co. v Matthew Bender & Co., 220 AD2d 488 [2d Dept 1995].)
Judged by these standards, the court concludes that the only viable cause of action pleaded in the complaint is defendant SVA's claim for common-law trespass to chattels. To establish a trespass to chattels, SVA must prove that Kuprewicz intentionally, and without justification or consent, physically interfered with the use and enjoyment of personal property in SVA's possession, and that SVA was harmed thereby. (PJI2d 3:9 [2003].) Thus, one who intentionally interferes with another's chattel is liable only if the interference results in harm to "the [owner's] materially valuable interest in the physical condition, quality, or value of the chattel, or if the [owner] is deprived of the use of the chattel for a substantial time." (Restatement [Second] of Torts § 218, Comment e.) Furthermore, to sustain this cause of action, the defendant must act with the intention of interfering with the property or with knowledge that such interference is substantially certain to result. (Buckeye Pipeline Co. v Congel-Hazard, Inc., 41 AD2d 590 [4th Dept 1973]; 2 NY PJI2d 86 [2003].)
In its complaint, SVA alleges that Kuprewicz caused "large volumes" of unsolicited job applications and pornographic e-mails to be sent to SVA and Pearlberg by way of SVA's computer{**3 Misc 3d at 282} system, without their consent. The complaint further alleges that these unsolicited e-mails have "depleted hard disk space, drained processing power, and adversely affected other system resources on SVA's computer system." (Complaint ¶ 70.) The court concludes that, accepting these factual allegations as true, SVA has sufficiently stated a cause of action for trespass to chattels, and has alleged facts constituting each element of this claim. (See, e.g., CompuServe Inc. v Cyber Promotions, Inc., 962 F Supp 1015 [SD Ohio 1997] [sending unsolicited commercial bulk e-mail states claim for trespass to chattels where it was shown that processing power and disk space were adversely affected]; Hotmail Corp. v Van$ Money Pie Inc., 1998 WL 388389, 1998 US Dist LEXIS 10729 [ND Cal, Apr. 16, 1998] [plaintiff likely to prevail on trespass to chattels claim upon showing that defendant's unsolicited e-mails filled up plaintiff's [*3]computer storage space]; America Online, Inc. v IMS, 24 F Supp 2d 548 [ED Va 1998]; America Online, Inc. v LCGM, Inc., 46 F Supp 2d 444 [ED Va 1998].) Thus, Kuprewicz's motion to dismiss SVA's claim for common-law trespass to chattels must be denied.
Intel Corp. v Hamidi (30 Cal 4th 1342, 1 Cal Rptr 3d 32 [2003]), upon which Kuprewicz relies, does not require a contrary result. In that case, the defendant's e-mail communications "caused neither physical damage nor functional disruption to the [plaintiff's] computers, nor did they at any time deprive [the plaintiff] of the use of its computers." (30 Cal 4th at 1346, 1 Cal Rptr 3d at 36.) Thus, the court held that, in the absence of any actual damage, the tort of trespass to chattels did not lie. Here, to the contrary, SVA's complaint alleges that such physical damage occurred so as to sustain the trespass claim.[FN3]

SVA maintains that Kuprewicz's conduct is "particularly intrusive" because of the substance, content and nature of the unsolicited e-mails, i.e., pornographic material. However, this court's decision to sustain the trespass to chattels claim is not based upon the content of the e-mails, but rather, is predicated upon plaintiffs' allegation that its receipt of large volumes of e-mails have caused significant detrimental effects on SVA's computer systems. It is important to note that, by this decision, the court does not hold that the mere sending of unsolicited e-{**3 Misc 3d at 283}mail communications will automatically subject the sender to tort liability. The court merely concludes that, at this early stage in the litigation, accepting SVA's factual allegations of damage to its computer systems, the complaint states a valid cause of action for trespass to chattels.
However, plaintiff's remaining causes of action must be dismissed. Plaintiffs contend that Kuprewicz's alleged postings of the fictitious job listings defamed both Pearlberg and SVA. It is well settled that "[w]hether particular words are defamatory presents a legal question to be resolved by the court in the first instance." (Aronson v Wiersma, 65 NY2d 592, 593 [1985].) In assessing defamatory meaning, the words must be given a fair reading and must be construed in the context of the entire statement as a whole tested against the understanding of the average reader. (Alvarado v K-III Mag. Corp., 203 AD2d 135 [1st Dept 1994]; Aronson v Wiersma, 65 NY2d at 592.) If the words are not "reasonably susceptible of a defamatory meaning, they are not actionable and cannot be made so by a strained or artificial construction." (Aronson v Wiersma, 65 NY2d at 594.)
A written statement can be defamatory if it " 'tends to expose a person to hatred, contempt or aversion, or to induce an evil or unsavory opinion of him in the minds of a substantial number of the community.' " (Golub v Enquirer/Star Group, 89 NY2d 1074, 1076 [1997], quoting Mencher v Chesley, 297 NY 94, 100 [1947].) Where the defamation claim is premised upon statements tending to injure a plaintiff in her profession or business, there is no need to plead or prove special damages, since a presumption of damage flows from the nature of the disparagement. (Spivak v Thompson U.S.A., 258 AD2d 364 [1st Dept 1999].)[FN4]

[*4]The challenged statements, however, must be more than a general reflection upon the plaintiff's character or qualities, and must amount to an attack on the plaintiff's professional abilities or suggest improper performance or unprofessional conduct. (Golub v Enquirer/Star Group, 89 NY2d at 1076; Chiavarelli v Williams, 256 AD2d 111 [1st Dept 1998]; Clemente v Impastato, 274 AD2d 771 [3d Dept 2000].)
Thus, the question before this court is whether the false job postings advertising Pearlberg's position can be reasonably viewed as tending to injure Pearlberg in her profession. Pearlberg maintains that the job postings constitute defamation because {**3 Misc 3d at 284}they are false statements to the public that SVA was seeking to replace Pearlberg in her position as Director of Human Resources. The court concludes, however, that the simple statement that Pearlberg's position was vacant cannot be reasonably construed as imputing professional unfitness or incompetence to Pearlberg, and thus does not constitute defamation. (Golub v Enquirer/Star Group, 89 NY2d at 1076; Chiavarelli v Williams, 256 AD2d 111; Clemente v Impastato, 274 AD2d 771.)
Even if one were to read the job postings as implying that Pearlberg was terminated, the postings would still not be defamatory because "[t]he mere fact of one's removal from [a job] carries no imputation of dishonesty or lack of professional capacity." (Nichols v Item Publs., 309 NY 596, 601 [1956].) Only when the statement insinuates that the dismissal was for some misconduct can there be defamation. (Id.) Since the job postings neither state nor imply that Pearlberg was terminated as a result of professional misconduct, they do not state a cause of action for defamation as a matter of law. (See Chang v Fa-Yun, 265 AD2d 265 [1st Dept 1999] [mere statement of discharge or termination from employment, even if untrue, does not constitute libel]; Serratore v American Port Servs., 293 AD2d 464 [2d Dept 2002] [same].)[FN5]

SVA alleges that it too was defamed by the job postings because the false statements were made in the name of SVA. However, since the postings merely announce a job opening at SVA, they cannot be reasonably susceptible of any defamatory meaning. SVA also claims that Kuprewicz committed the tort of trade libel. To sustain that cause of action, SVA must allege facts that Kuprewicz knowingly published false matter derogatory to SVA's business that was calculated to prevent others from dealing with SVA or interfering with SVA's relations with others, to its detriment. (Global Merchants v Lombard & Co., 234 AD2d 98 [1st Dept 1996]; Waste Distillation Tech. v Blasland & Bouck Engrs., 136 AD2d 633 [2d Dept 1988].) Since the job {**3 Misc 3d at 285}postings do not contain any false matter derogatory to SVA's business, that cause of action must also be dismissed. Dismissal is also appropriate because SVA failed to plead special damages. (See Rall v Hellman, 284 AD2d 113 [1st Dept 2001] [special [*5]damages must be alleged in trade libel claim]; DiSanto v Forsyth, 258 AD2d 497 [2d Dept 1999] [same].)
The complaint alleges two causes of action under the Lanham Act (15 USC §§ 1051-1127). First, SVA contends that in posting the false job listings, Kuprewicz violated 15 USC § 1125 (a) by using in commerce a false designation of origin which caused deception, confusion and mistake as to Kuprewicz's connection and affiliation with SVA, and as to the origin, sponsorship and approval of Kuprewicz's commercial activities by SVA ("the false designation of origin claim"). In the second Lanham Act claim, SVA maintains that the false job postings caused negative associations with and thus diluted the distinctive quality of SVA's service mark in violation of 15 USC § 1125 (c) ("the dilution claim").
To sustain a cause of action for false designation of origin, SVA must prove that the false designation was used "in commerce" and "in connection with . . . goods or services." (15 USC § 1125 [a] [1].) Likewise, to prove its dilution claim, SVA must establish that Kuprewicz's use of the mark was a "commercial use in commerce." (15 USC § 1125 [c] [1].) The term "use in commerce" is defined as "the bona fide use of a mark in the ordinary course of trade" (15 USC § 1127), and "contemplate[s] a trading upon the goodwill of or association with the trademark holder." (Karl Storz Endoscopy Am., Inc. v Surgical Tech., Inc., 285 F3d 848, 855 [9th Cir 2002].) The noncommercial use of a mark is simply not actionable under the Lanham Act. (See 15 USC § 1125 [c] [4] [B]; Bihari v Gross, 119 F Supp 2d 309 [SD NY 2000].) Thus, "courts have rejected efforts to extend the Lanham Act to cases where the defendant is not using or displaying the trademark in the sale, distribution or advertising of its goods or services." (International Assn. of Machinists & Aerospace Workers, AFL-CIO v Winship Green Nursing Ctr., 103 F3d 196, 209 [1st Cir 1996] [concurring op].)
The court concludes that, accepting all of SVA's factual allegations as true, the complaint fails to state a cause of action for false designation of origin or dilution under the Lanham Act. The posting of the job listings containing SVA's mark was neither "in commerce" nor "in connection with goods or services." There is no allegation that Kuprewicz was involved in any {**3 Misc 3d at 286}business or had any goods or services to advertise, distribute, sell or offer. Nor is there any claim that Kuprewicz was competing with SVA or otherwise attempting to divert business or customers from SVA. Indeed, the job postings directed prospective applicants to send information directly to SVA, and not to some other location. Thus, since Kuprewicz's alleged conduct was noncommercial, the Lanham Act claims must be dismissed.
Although this court has not found any case directly on point, courts have held, in different contexts, that a defendant's noncommercial use of a plaintiff's trademark does not violate the Lanham Act. For example, in WHS Entertainment Ventures v United Paperworkers Intl. Union (997 F Supp 946 [MD Tenn 1998]), the court found that a labor union's purpose in distributing flyers bearing the employer's trademark was not to advertise itself or its services, but to pressure the employer in a labor dispute. The court concluded that since the union's use of the mark did not constitute a "use in commerce," there was no claim for false designation of origin or dilution. Likewise in International Assn. of Machinists & Aerospace Workers, AFL-CIO v Winship Green Nursing Ctr. (914 F Supp 651 [1996] [D Me], affd on other grounds 103 F3d 196 [1st Cir 1996]), the court held that an employer's use of a labor union's trademark in an allegedly confusing manner in the course of campaigning to defeat the union was not a [*6]commercial use of the mark and thus did not violate the Lanham Act. (See also Lucasfilm Ltd. v High Frontier, 622 F Supp 931, 934 n 2 [D DC 1985] [advertising companies not liable for using the trade name "Star Wars" in the political debate over a national policy because the trademark laws only reach activities in which a trademark is used in connection with selling or advertising services]; Stop the Olympic Prison v United States Olympic Comm., 489 F Supp 1112, 1124 [SD NY 1980] [expressing serious doubts as to whether the Lanham Act applies to the deceptive use of the Olympic trademark by a group opposing the conversion of Olympic facilities into a prison, in part because "there is no suggestion that the alleged deception was in connection with any goods or services"].)
The cases upon which SVA relies are distinguishable. In OBH, Inc. v Spotlight Mag., Inc. (86 F Supp 2d 176 [WD NY 2000]), the defendants used the plaintiffs' trademark as the domain name for the defendants' Web site. The defendants' Web site contained a "hyperlink" connecting users to another Web site operated by defendants for commercial purposes. The court held that {**3 Misc 3d at 287}the defendants' conduct was "in commerce" and "in connection with goods and services" because it served to harm the plaintiff commercially and affected the plaintiffs' ability to offer their services in commerce. Similarly, in Bihari v Gross (119 F Supp 2d 309), the court held that the defendants' use of the plaintiffs' mark to direct Internet users to the defendants' Web site was a "commercial use" because the defendants' Web site contained links to other Web sites promoting the services of the plaintiffs' competitors. And in America Online v LCGM, Inc. (46 F Supp 2d 444), the court found that the use of the plaintiff's trademark was "in connection with goods and services" because the defendants' e-mails advertised the defendants' commercial Web sites. Here, in contrast, there are no facts alleging any such commercial use of SVA's mark, or that Kuprewicz's conduct in any way affected SVA's ability to offer its services in commerce.[FN6]

In the absence of clear authority supporting SVA's interpretation of the Lanham Act, this court is "unwilling to stretch the Lanham Act into unfamiliar contours simply for the sake of punishing conduct that [it] deplore[s]." (International Assn. of Machinists & Aerospace Workers, AFL-CIO v Winship Green Nursing Ctr.,103 F3d at 207.)
Next, Pearlberg alleges that Kuprewicz has violated Civil Rights Law § 51, New York's right to privacy statute.[FN7]

That provision allows an action for damages to be brought by "[a]ny person whose name . . . is used within this state for advertising purposes or for the purposes of trade without the written consent [of such person]." (Emphasis added.) A person's name is used "for advertising purposes" if it "appears in a publication which, taken in its entirety, was distributed for use in, or as part of, an advertisement or solicitation for patronage of a particular product or service." (Beverley v Choices Women's Med. Ctr., 78 NY2d 745, 751 [1991].)[*7]"Trade purposes" is defined as "use which would draw trade to the [defendant's] firm." (Kane v Orange County Publs., 232 AD2d 526, 527 [2d Dept 1996], citing Flores v Mosler Safe Co., 7 NY2d 276, 284 [1959]; see also Davis v High Socy. Mag., 90 AD2d 374 [2d Dept 1982] [to constitute a "trade purpose," the use of the plaintiff's name must be spurred by {**3 Misc 3d at 288}the profit motive or used to encourage sales or distribution of the publication].)
The complaint alleges that Kuprewicz has violated this statute by using Pearlberg's name on the job postings as well as in connection with subscribing to the pornographic Web sites and catalogs. At the outset, there is no allegation that Pearlberg's actual name was used on the job postings or in connection with the pornographic Web sites. In any event, Kuprewicz's alleged conduct does not fall within the reach of the statute because Pearlberg's name was not used "for advertising purposes or for the purposes of trade." Thus, Pearlberg's claims under the Civil Rights Law must be dismissed. (See Finger v Omni Publs. Intl., 77 NY2d 138, 141 [1990] ["(w)e have repeatedly observed that the prohibitions of Civil Rights Law §§ 50 and 51 are to be strictly limited to nonconsensual commercial appropriations of (a person's) name . . . These statutory provisions prohibit the use of . . . names . . . 'for advertising purposes or for the purposes of trade' only, and nothing more"]; Frank v National Broadcasting Co., 119 AD2d 252 [2d Dept 1986] [dismissing Civil Rights Law § 51 claim because nothing in the record suggested that the use of the plaintiff's name was for advertising or trade purposes].)
The court also dismisses SVA's claim for intentional interference with prospective economic advantage. To sustain this cause of action, SVA must allege that Kuprewicz intentionally interfered with a precontractual business relationship either by unlawful means or by lawful means without justification. Here, plaintiffs argue that by posting false job listings, Kuprewicz interfered not only with SVA's hiring and recruiting activities, but also with the existing employment relationship between Pearlberg and SVA. It is well settled that an essential element of this tort is that the plaintiff would have consummated a contract with another person but for the interference of the defendant. (Gebbia v Toronto-Dominion Bank, 306 AD2d 37 [1st Dept 2003]; Brown v Bethlehem Terrace Assoc., 136 AD2d 222 [3d Dept 1988].) But it is SVA's position that the job was not open and therefore it would not have contracted with any of the applicants. Thus, since plaintiffs fail to allege that any contract would have been entered into in the absence of Kuprewicz's interference, this claim must be dismissed. (See Susskind v Ipco Hosp. Supply Corp., 49 AD2d 915 [2d Dept 1975] [dismissing complaint because it was devoid of allegations that negotiations would have culminated in a contract but for the defendant's interference].){**3 Misc 3d at 289}
Finally, plaintiffs argue that Kuprewicz's motion to dismiss should be denied under CPLR 3211 (d) pending further discovery on the ground that facts essential to justify opposition may exist but cannot be stated. Plaintiffs contend that their outstanding discovery demand to inspect Kuprewicz's computer will lead to records and "trails" which will connect her to the acts set forth in the complaint.[FN8]

Although the information sought by plaintiffs may help prove that Kuprewicz committed the conduct alleged in the complaint, there is no reason to [*8]believe that it would help plaintiffs to establish that the causes of action being dismissed are viable, or, more specifically, that it would help plaintiffs rectify the pleading defects in the complaint. (See Mandel v Busch Entertainment Corp., 215 AD2d 455 [2d Dept 1995] [party's mere invocation of CPLR 3211 (d) is not, by itself, enough to defeat such a motion; a party must come forward with some tangible evidence showing the validity of the causes of action].)
By this decision, the court does not mean to suggest that Kuprewicz's alleged conduct is acceptable behavior, that plaintiffs are left with no legal remedy, or that Pearlberg may not legitimately be upset over the receipt of sexually explicit materials. The court merely holds that, aside from trespass to chattels, the complained-of conduct does not satisfy the specific elements of the causes of action plaintiffs decided to include in the complaint. It is not the court's function to determine what other torts, if any, may have been committed by Kuprewicz. Rather, that is a course best charted by the party seeking redress.[FN9]

Accordingly, it is ordered that defendant Kuprewicz's cross motion to dismiss the complaint is granted as to plaintiffs' claims for Lanham Act violations (causes of action one and two), trade libel and defamation (cause of action three), violation of Civil Rights Law §§ 50-51 (cause of action four), and intentional interference with prospective economic advantage (cause of action six); and it is further ordered that defendant Kuprewicz's cross motion to dismiss the complaint is denied as to plaintiffs' claim for common-law trespass to chattels (cause of action five); and it is further ordered that the parties are directed to appear at {**3 Misc 3d at 290}a preliminary conference on January 14, 2004 at 10:30 a.m. in Part 24, room 418 of 60 Centre Street.[FN10]

Footnotes

Footnote 1: It is conceded that no such job posting ever appeared on www.monster.com.

Footnote 2: The court previously rendered an oral ruling granting, in part, plaintiffs' motion for a preliminary injunction to the extent of enjoining Kuprewicz from sending pornographic e-mail to plaintiffs.

Footnote 3: Kuprewicz argues that any effect these e-mails may have had on SVA's computer systems was not substantial or significant enough to cause the requisite damage. However, that is an issue for a future motion after discovery has taken place.

Footnote 4: Plaintiffs contend that the statements in issue injured them in their trade, business and profession, and thus have not pleaded special damages in the complaint.

Footnote 5: Although not pleaded in the complaint, plaintiffs argue in their memorandum of law that Kuprewicz has defamed Pearlberg by providing Pearlberg's name to pornographic Web sites and catalogs. Plaintiffs maintain that such conduct humiliated Pearlberg in her professional standing. However, plaintiffs do not point to any specific statement alleged to have been published by Kuprewicz. Even if one were to construe the mere act of subscribing Pearlberg to the Web sites and catalogs as a "statement" that Pearlberg was interested in pornography, it would not be defamatory absent special damages because it does not impute professional unfitness or incompetence to Pearlberg.

Footnote 6: SVA also argues that the fact that the job listings were posted on the Internet satisfies the "use in commerce" requirement. However, " '[t]he mere use of another's name on the Internet . . . is not per se commercial use.' " (Bihari v Gross, 119 F Supp 2d at 318, quoting Bally Total Fitness Holding Corp. v Faber, 29 F Supp 2d 1161, 1166 [CD Cal 1998].)

Footnote 7: Pearlberg also claims that the conduct violates Civil Rights Law § 50. However, that section merely provides for criminal penalties.

Footnote 8: In a previous oral ruling, the court enjoined Kuprewicz from destroying or erasing any files from her home computer and directed Kuprewicz to give the computer to her lawyer so as to preserve potential evidence.

Footnote 9: Kuprewicz asks this court to dismiss plaintiffs' claims with prejudice. However, the court need not address this issue now because the court does not know if plaintiffs will seek leave to amend the complaint, or may opt instead to commence another action with new claims.

Footnote 10: As noted earlier, the court issued a limited preliminary injunction in this action. At the preliminary conference, the court will address whether the injunction has continuing viability in light of this decision.